**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Apr 20 2012, 9:40 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY J. BURNS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD PARKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1108-CR-788 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Teresa A. Hall, Master Commissioner
Cause No. 49G16-1104-CM-26953

**April 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Donald Parker appeals his conviction, following a bench trial, of Intimidation as a class A misdemeanor.[1] Parker challenges the sufficiency of the evidence as the sole issue on appeal.

We affirm.

On the night of April 8, 2011, Lisa Walker went out to a bar with her friend Angel and the two women were joined by Angel's fiancé. Angel took Lisa home around 1:15 a.m. the following morning. At the time, Lisa was living with Parker. Parker immediately confronted Lisa about where she had been and whether she had been with another man at the bar. Lisa asked Parker if he had been drinking vodka, and Parker responded affirmatively. An argument between Lisa and Parker ensued. Lisa eventually went to her bedroom and locked the door behind her. She then called Angel and asked her to stay on the phone because she had "a feeling things [were] gonna get bad." *Transcript* at 11. Parker then pushed or kicked in the bedroom door, breaking it. Parker screamed at Lisa, calling her a "b*tch" telling her that she "wasn't any good" and that "it was no wonder [her] ex-husband used to beat on [her]" because she "deserved it." *Id.*

Lisa told Parker that he needed to leave or she was going to call the police. Parker continued to yell and scream at her, and told her that "I ought to pick up that beer bottle [on the kitchen table], and I ought to beat your ass half to death." *Id.* Lisa called Angel again and Angel started recording the conversation. Both Angel and her fiancé heard Parker's comments about using the beer bottle to beat Lisa.

---

[1] Ind. Code Ann. § 35-45-2-1 (West, Westlaw current through 2011 1st Regular Sess.).

Lisa then told Parker that she was going to call Parker's probation officer and inform her that Parker had been drinking. Parker told Lisa to mind her own business and then he smashed a soda can, spilling its contents on Lisa's bed. At this point, Lisa asked Angel to call the police and then Lisa hung up the phone. Police arrived shortly thereafter, and Parker left the house through the back door.

Around 8:00 a.m. the following morning, Parker called Lisa and began yelling at her and telling her that "this was all [her] fault." *Id*. at 14. Lisa again told Parker that she was going to talk to his probation officer and Parker told Lisa that "if [she] called his probation officer to tell his probation officer that he's been drinking, and he goes to jail, that if he can't get to [her] he's gonna make sure that somebody did." *Id*. Lisa understood Parker's statement as a threat and it caused her to fear for her safety.

On April 20, 2011, the State charged Parker with intimidation as a class A misdemeanor. A bench trial was held on July 14, 2011, at the conclusion of which the trial court found Parker guilty as charged. The trial court subsequently sentenced Parker to an executed term of 365 days, with the first 180 days to be served at the Marion County Jail and the remaining time to be served on home detention through community corrections. The trial court also ordered the sentence be served consecutively to the sentence imposed in another cause. Parker now appeals.

Parker argues that the evidence is insufficient to support his conviction for intimidation. Specifically, Parker contends that the words he used in the phone conversation did not constitute a threat as defined by statute.

Our standard of review for challenges to the sufficiency of the evidence is well settled.

3

When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

To sustain Parker's conviction for intimidation as a class A misdemeanor, the State's evidence must have proved beyond a reasonable doubt that Parker communicated a threat to Lisa with the intent that Lisa engage in conduct against her will, i.e., refrain from contacting Parker's probation officer.[2] *See* I.C. § 35-45-2-1. Parker argues that the words he communicated to Lisa during their phone call on the morning of April 9 do not constitute a threat. "Threat" is defined, as pertinent to this case, as "an expression, by words or action, of an intention to unlawfully injure the person threatened or another person, or damage property." I.C. § 35-45-2-1 (c)(1).

Lisa testified that after she told Parker she was going to call his probation officer that he told her that if he went to jail, "if he can't get to [her] he's gonna make sure that somebody did." *Transcript* at 14. Lisa testified that those were Parker's "exact words." *Id*.

In *Townsend v. State*, 753 N.E.2d 88 (Ind. Ct. App. 2001), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007), the defendant, after being arrested

---

[2] The charging information did not reference Parker's communication to Lisa that he "ought to pick up that beer bottle [on the kitchen table], and . . . beat your ass half to death." *Transcript* at 11.

4

by a police officer, told the officer that he would "get" the officer and his family "[n]o matter how long it takes me, I will get you." *Id*. at 90. This court held that the jury could have reasonably concluded that by those words, the defendant communicated a threat to the officer.

In *Earlywine v. State*, 847 N.E.2d 1011 (Ind. Ct. App. 2006), the defendant communicated to people inside a home that they would "get it" if they stood between him and his wife. *Id*. at 1012. This court upheld the intimidation conviction, finding that the evidence sufficiently established that the defendant communicated a threat. This court stated that "threats of potential, nonspecific violence" can support the threat element of intimidation as a class A misdemeanor. *Id* at 1014.

We find Parker's communication in this case to be in the same ball park as the communications found to constitute threats in *Townsend* and *Earlywine*. Given the surrounding circumstances and the context of Parker's communication, the trial court could reasonably infer by Parker's statement to Lisa that he would "get to [her]" if she contacted his probation officer and he was sent back to jail, Parker was threatening physical harm to Lisa. Parker's citation to his testimony that he did not threaten Lisa and his argument that his words could be construed otherwise are simply requests that this court reweigh the evidence and assess the credibility of the witnesses, a task that we will not engage in on appeal.

Judgment affirmed.

MAY, J., and BARNES, J., concur.